NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

FREIGHTMASTER USA, LLC,

              *Plaintiff*,

v.

FEDEX, INC.,

              *Defendant*.

Civil No.: 14-3229 (KSH) (CLW)

**Opinion**

**Katharine S. Hayden, U.S.D.J.**

**I.  Introduction**

Freightmaster USA, LLC ("Freightmaster") filed suit in New Jersey Superior Court against defendant Fedex Freight, Inc.[1] ("Fedex"), claiming that Fedex owed it fees for cargo and freight delivery services under a cartage agreement ("Agreement"). (D.E. 1-1, "Compl.") Fedex removed this action, relying on this Court's diversity jurisdiction (D.E. 1, "Notice of Removal."), and brought the motion to dismiss that is now before the Court. [D.E. 5.] As set forth below, the motion will be granted in part and denied in part.

**II.  Background**

The following facts and procedural history are taken from Freightmaster's complaint, documents integral to its allegations that are referenced in the complaint, and the public record. The Court accepts as true all facts in the complaint and draws all reasonable inferences from the facts in a light most favorable to Freightmaster. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2006).

---

[1] Freightmaster improperly named the defendant as Fedex, Inc. in its complaint, but the Court will refer to the proper defendant.

1

Freightmaster performed "cargo and freight delivery services" for Fedex from December 2008 to April 2010 pursuant to the Agreement in about June 2009.[2] (Compl., ¶ 4; D.E. 1-2, "Agreement.")  According to Freightmaster, it "performed all services and all services were used and accepted by" Fedex, and from approximately October 2009 through April 2010, it repeatedly sought payment for those services.  (*Id.* ¶¶ 5, 6.)  Freightmaster claims that Fedex knew about its debt because of repeated correspondence sent in an attempt to collect it.  (*Id.* ¶¶ 6, 7.)

Earlier, in September, 2012, Freightmaster had filed suit against Fedex in state court to collect fees allegedly owed for services performed between November 2003 and September 2007, asserting claims of breach of contract and the duty of good faith and fair dealing, unjust enrichment, negligent infliction of economic loss, and promissory estoppel.[3]  (D.E. 5-3, "Rygiel-Boyd Aff.," ¶ 4; D.E. 19-1.)  On October 30, 2013, that action was dismissed without prejudice, and Freightmaster moved for reconsideration, which the court denied.  (Rygiel-Boyd Aff., ¶¶ 5, 6.)

On March 24, 2014, Freightmaster filed a nearly identical complaint against Fedex in state court, containing the same allegations as the dismissed complaint with the addition of a claim of bad faith.  This time, it sought payment for services rendered from December 2008 to April 2012.  (Compl., ¶ 4.)  On May 20, 2014, Fedex removed the action from state court, citing this Court's diversity jurisdiction.  (Notice of Removal, ¶ 17.)  Fedex indicates that it first became aware of Freightmaster's lawsuit on April 21, 2014, when it received a copy of the complaint, civil case information statement, and tracking assignment notice from Federal Express Corporation by

---

[2] Although not attached to Freightmaster's complaint, the court may consider the Agreement, which was an exhibit to Fedex's motion to dismiss, because it was "a document *integral to or explicitly relied* upon in the complaint." *Schmidt*, 770 F.3d at 241 (citation and internal quotation marks omitted).

[3] Freightmaster contends that the Court cannot rely on its prior lawsuit against Fedex because it is a matter outside the complaint and its exhibits, but "[t]o decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and *matters of public record*." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (emphasis added) (citation and internal quotation marks omitted).

2

certified mail. (*Id.* ¶ 2.) Fedex then filed the within motion to dismiss in lieu of an answer for insufficient service and service of process and failure to state a claim upon which relief can be granted. [D.E. 5.]

### III.     Discussion

#### A.     Fed. R. Civ. P. 12(b)(4), (5)

Fedex claims that Freightmaster failed to properly serve it and that the complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(4) and (5). Fedex alleges that Freightmaster sent the complaint, without attaching a summons, by certified mail to Federal Express Corporation's principal place of business in Memphis, Tennessee,[4] and that Fedex, which is the proper defendant and a separate corporate entity, has its principal place of business in Arkansas where it is also organized and incorporated. (Notice of Removal, ¶¶ 2, 11, 13.) Fedex claims to have received notice of Freightmaster's lawsuit only after Federal Express Corporation sent it the complaint by certified mail. (*Id.* ¶ 2.) Freightmaster concedes to the facts regarding service of the complaint and the summons, but claims that improper service is irrelevant because Fedex did not suffer any prejudice, having received notice of the complaint within the 30-day period to remove the suit to federal court.

The New Jersey Court Rules govern whether Freightmaster effected proper service on Fedex because it was made prior to removal. *See Di Loreto v. Costigan*, 351 F. App'x 747, 752 (3d Cir. 2009). N.J. Ct. R. 4:4-4(a)(6) states that proper service is made on a corporation:

> by serving a copy of the summons and complaint[, personally,] on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof, or, if service cannot be made on any of those persons, then on a person at the principal place of business of the corporation in this State in charge thereof, or if there is no place of

---

[4] According to Fedex, Federal Express Corporation is not authorized or appointed by law to receive service on its behalf, and Freightmaster does not deny this allegation.

>business in this State, then on any employee of the corporation within this State acting in the discharge of his or her duties.

Service by mail is only permitted if, after "diligent effort and inquiry," it cannot be achieved as described above. N.J. Ct. R. 4:4-4(b)(1). Thus, Freightmaster's service was improper because it did not personally serve Fedex with the complaint and summons, and it sent the complaint by certified mail without first attempting personal service.

Nevertheless, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); *see also Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1306 (3d. Cir. 1995). A plaintiff seeking to demonstrate good faith must show "some reasonable basis for noncompliance within the time specific rules." *Chiang v. U.S. Small Bus. Admin.*, 331 F. App'x 113, 115 (3d Cir. 2009). Prejudice to the defendants also factors into the court's good faith assessment, but the "absence of prejudice alone can never constitute good cause to excuse late service." *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995). Instead, the court's "primary focus is on the plaintiff's reasons for not complying . . . in the first place." *Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997) (citation and internal quotation marks omitted).

In the absence of good cause, "[a] court may in its discretion decide whether to dismiss the case without prejudice or extend the time for service." *Petrucelli*, 46 F.3d at 1306. An exercise of the court's discretion to extend time for service is proper, for example, if the statute of limitations would prevent the refiling of the action or the defendant has tried to evade service, *id.*, and the court may also consider whether the plaintiff proceeded *pro se* or later moved to extend the time within which to serve the defendant. *Snyder v. Swanson*, 371 F. App'x 285, 287 (3d Cir. 2010). Further, the Third Circuit has repeatedly stressed that there is a "prefer[ence] that cases be

adjudicated on the merits." *Catanzaro v. Fischer*, 507 F. App'x 162, 165 (3d Cir. 2014) (quoting *Hritz v. Woma Corp.*¸ 732 F.2d 1178, 1181 (3d Cir. 1984)).

Freightmaster first became aware that it did not properly serve Fedex on May 20, 2014, when Fedex removed the action, and this motion to dismiss was filed on June 6, 2014. [D.E. 5.] On June 30, 2014, Freightmaster's prior counsel requested to extend the time to file the opposition from July 7 to July 21, 2014, which was granted. [D.E. 7.] By letter date July 15, 2014, prior counsel told the Court for the first time that he did not practice in federal court and requested for a further time extension to allow Freightmaster to obtain substitute counsel and respond to the motion to dismiss. The Court was informed by Freightmaster's current counsel on July 22, 2014, that he had been approached to represent Freightmaster and would make a decision after reviewing the case's file. [D.E. 9-1.] On July 31, 2014, Freightmaster's current counsel filed his substitution of attorney, and he soon thereafter filed the opposition brief to Fedex's motion to dismiss on August 8, 2014. [D.E. 11; 15.]

The Court finds that if it were not to permit Freightmaster to re-serve the complaint the statute of limitations on its claim could run. At the earliest, Freightmaster asserted that it gave Fedex notice about the debt in about October 2009 and, viewing the facts in a light most favorable to Freightmaster, Freightmaster's claims accrued at that time. The statute of limitations in New Jersey for those claims is six years, N.J.S.A. 2A:14-1. Accordingly, in the interest of adjudicating the case on the merits, the Court will allow Freightmaster 15 days to name Fedex in the complaint and properly serve it at its principal place of business in Arkansas.

### B.    Rule 12(b)(6)

Having determined that Freightmaster may re-serve Fedex, it is necessary to proceed to Fedex's motion to dismiss under Rule 12(b)(6) because there would be no need for Freightmaster to do so if the motion is granted.  Fedex argues that all of Freightmaster's claims are barred by New Jersey's Entire Controversy Doctrine and a nine-month contractual statute of limitations in the Agreement, and it also seeks dismissal of Freightmaster's unjust enrichment and promissory estoppel claims for failure to state a claim.

In order for a complaint to survive dismissal under Fed. R. Civ. P. 12(b)(6), it must put forth sufficient facts to show "that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint containing only "conclusory or 'bare bones' allegations will [not] survive a motion to dismiss." *Fowler*, 578 F.3d at 210.

In reviewing a motion to dismiss, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard legal conclusions." *Id.* at 210-11.  "[A] complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." *Id.* at 211.  However, the facts need not show a probability of relief, but need only show a plausibility of relief.  *Iqbal*, 556 U.S. at 678.

### 1.    Entire Controversy Doctrine

Fedex first contends that Freightmaster is precluded from pursuing its claims because they could have been raised in its September 2012 complaint and therefore the Entire Controversy Doctrine bars Freightmaster from pursuing them in the current lawsuit.  In New Jersey, the Entire

Controversy Doctrine provides that the "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims. N.J. Ct. R. 4:30A.[5] "The 'doctrine seeks to ensure that all aspects of a legal dispute occur in a single lawsuit,'" *Reid v. Transp. Ins. Co.*, 502 F. App'x 157, 159 (3d Cir. 2012) (quoting *Olds v. Donnelly*, 150 N.J. 424, 431 (1997)), and only "bars a subsequent action [] when a prior action based on the same transactional facts has been tried to judgment or settled." *Arena v. Borough of Jamesburg*, 309 N.J. Super. 106, 111 (App. Div. 1998); *see also Nubenco Enters., Inc. v. Inversiones Barberena, S.A.*, 963 F. Supp. 353, 370-71 (D.N.J. 1997) (Lechner, J.) (holding that the Entire Controversy Doctrine barred the plaintiff's claim because it had previously asserted a counterclaim in a related extra-territorial adjudication that was currently under appeal). In rare circumstances, the Entire Controversy Doctrine has been applied to bar later litigation when the first action was not adjudicated on the merits, but in those cases, there was either extensive pre-litigation activity or multiple, vexatious complaints filed the plaintiff. *See Thomas*, 2012 WL 646023, at *4 (finding that plaintiff's claim was barred after settling one claim with the defendant, and then attempting to engage in piecemeal litigation of related claims by filing successive complaints.); *DiTrolio v. Antiles*, 142 N.J. 253, 278 (1995) (applying Entire Controversy Doctrine to non-joined parties, when prior litigation settled after extensive pre-litigation activity).

Freightmaster's first state court lawsuit was filed on September 2012 and sought fees owed for services performed from November 2003 and September 2007, and this lawsuit's alleges fees are owed fees for services Freightmaster performed from December 2008 to April 2012. The fact

---

[5] Freightmaster speculates whether the Entire Controversy Doctrine, as a matter of state law, even applies in federal court, but "as an aspect of the substantive law of New Jersey," a federal court applying New Jersey law is bound by it. *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 887 (3d Cir. 1997); *see also Thomas v. Care Plus of N.J., Inc.*, No. 11-3493, 2012 WL 646023 (D.N.J. Feb. 28, 2012) (Martini, J.) ("When deciding the preclusive effect of a state court judgment, federal courts apply the rendering state's law on preclusion.").

that Freightmaster's first state court lawsuit was filed in September 2012 means that it could have also pursued the fees sought here. Freightmaster's claims in this action are related to the same transactional facts concerning Fedex's debt for shipping and freight fees, albeit under separate, but similar, contracts. However, there was no adjudication on the merits or settlement between the parties in the first action, and as a result, the Entire Controversy Doctrine does not bar Freightmaster's current lawsuit. *Arena*, 309 N.J. Super. at 111.

### 2. **Contractual Statute of Limitations**

Fedex also contends that Freightmaster's compliant must be dismissed because its claims are barred by a nine-month statute of limitations in the Agreement. Freightmaster counters by asserting that the nine-month provision was the time limit for it "to send some type of invoice or billing statement to Fedex for any particular freight or accessorial charge." [D.E. 15.]

The contractual statute of limitations is found in "Article V – Compensation" of the Agreement and states that "[t]he statute of limitations for presenting claims is nine (9) months from freight bill date. Claims presented outside of this timeframe will be disallowed." (Agreement at 2.) The Court finds that this is not a nine-month statute of limitations for bringing causes of action in court but rather the time limit in which Freightmaster was required to submit a freight bill to Fedex for payment.

"'Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and [the court] must enforce those terms as written.'" *John M. Floyd & Assocs., Inc. v. Ocean City Home Sav. Bank*, 206 F. App'x 129, 132 (3d Cir. 2006) (quoting *Kuzin v. Pirnie*, 124 N.J. 500, 507 (1991). Contractual statute of limitations normally contain language limiting a party's ability to file suit against the other from the date the cause of action arises or accrues, or from when the loss occurs. *See, e.g.*, *Smith v. TA Operating LLC*, No. 10-

2563, 2011 WL 3667507, at *1 (D.N.J. Aug. 19, 2011) (Wolfson, J.) ("any claim or lawsuit relating to my service with TA or any of its subsidiaries must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit."); *Fiorello v. WaMu*, No. 10-273, 2011 WL 810114, at *4 (D.N.J. Mar. 1, 2011) (Wolfson, J.) (alteration in original) ("[n]o suit or action may be brought against us unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the inception of loss or damage.) A plain reading of the contract does not indicate that Freightmaster is precluded *from filing suit* for non-payment beyond the nine month period. It instead indicates that Freightmaster must present a freight bill to Fedex within nine months, or Fedex will disallow payment on it.

Even if the clause contained language common to contractual statute of limitations, it would be unenforceable as unreasonable. *See Martinez-Santiago v. Public* Storage, 38 F. Supp. 3d 500, 506 (D.N.J. 2014) (Simandle, J.) (stating that contractual statute of limitations are valid if reasonable). As a practical matter Fedex would be insulated from liability so long as it waited nine months from the date of a freight before it refused to pay and thereby breach the Agreement. Freightmaster would have to anticipate Fedex's breach and bring suit before the nine-month period elapsed in order to protect its right to payment, setting up an unwieldy and fractious arrangement. The Court finds that Freightmaster's claims are not contractually barred by the nine-month period referenced in the Agreement.

### 3. Freightmaster's Unjust Enrichment and Promissory Estoppel Claims

Fedex also argues that Freightmaster's unjust enrichment claim in Count III and promissory estoppel claim in Count V must be dismissed because, as quasi-contract claims, they are unavailable since an express contract covers the subject matter of the dispute. It also claims that Freightmaster failed to plead sufficient facts to support its promissory estoppel claim because

9

it has not shown a definite promise, reasonable reliance, or detriment as a result of its reliance. Freightmaster counters, contending that it adequately pled claims of unjust enrichment and promissory estoppel because, despite the Agreement's validity, it may plead matters in the alternative.

"A plaintiff is not entitled to use the legal fiction of *quasi*-contract to substitute one promisor or debtor for another." *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 734 (D.N.J 2008) (quoting *Insulation Contracting & Supply v. Kravco, Inc.*, 209 N.J. Super. 367, 377 (App. Div. 1986)) (internal quotation marks omitted), and under New Jersey law, liability based on quasi-contractual principles cannot be imposed "if an express contract exists concerning the identical matter," *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.,* 716 F.2d 220, 226-27 (3d Cir. 1983). Neither party disputes the validity of the Agreement. While Freightmaster is entitled to plead in the alternative, *see* Fed. R. Civ. P. 8(d)(2), absent a claim that the Agreement is invalid or that it performed work beyond that covered by the Agreement, it cannot sustain claims founded on quasi-contractual theories, *see MK Strategies¸* 567 F. Supp. 2d at 734. Therefore, Fedex's motion to dismiss Freightmaster's unjust enrichment and promissory estoppel claims is granted.

**IV.    Conclusion**

For the foregoing reasons, the motion to dismiss is granted in part and denied in part. Freightmaster shall re-serve Fedex as prescribed by the Federal Rules of Civil Procedure no later than April 15, 2015.  An appropriate order will be entered.

/s/ Katharine S. Hayden_____
Dated: March 31, 2015                                         Katharine S. Hayden, U.S.D.J.