<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FREIGHTMASTER USA, LLC., *Plaintiff*, v. FEDEX FREIGHT, INC., *Defendant*. | Civil No. 2:14-3229 (KSH) (CLW) <br><br> <u>OPINION</u> |

   This case arises from a contract dispute over trucking services that plaintiff Freightmaster USA provided to defendant FedEx. Freightmaster alleges that FedEx owes it money for unpaid delivery fees. This Court dismissed two counts of the complaint after FedEx filed a motion to dismiss. Now FedEx has moved for summary judgment in its favor as to the four remaining contractual causes of action. In addition to raising substantive arguments, FedEx urges dismissal on grounds that Freightmaster does not have standing because it sold its accounts receivable to a third-party during the time in which it claims it was owed money. The Court first addresses the standing argument.

  **I.**  **Background**

   From December 2008 to April 2010, Freightmaster performed freight delivery services for FedEx. ("FedEx Statement of Material Facts") ¶ 5); D.E. 45-1 ("Freightmaster Statement of Material Facts") ¶ 5.) Freightmaster alleges that FedEx owes it approximately $240,120.00. (D.E. 24 ("2015 Opinion" at 2.) Freightmaster characterizes these charges as "accessorial charges," additional fees for transportation services beyond ordinary costs. (D.E. 47 ("Freightmaster Opp. Br.") at 6.)

1

Initially, the Court notes a discrepancy in Freightmaster's Brief. FedEx states: "The total amount due from Defendant to Plaintiff for unpaid freight accessorial charges is at least $240,120.00." (Freightmaster Opp. Br. at 4). But just a few pages later, Freightmaster states that FedEx owes a balance of $231,012.73 plus "certain accessorial charges," which totals $240,120.00.[1] (*Id.* at 6.) This could indicate that the accessorial charges claimed are $9,107.27, not $240,120.00.

The uncertainty is embedded in the record, which indicates that the parties executed two agreements in October 2008 and June 2009. (FedEx Statement of Material Facts ¶ 4; Freightmaster Statement of Material Facts ¶ 4.) The agreements required Freightmaster to invoice FedEx for all services provided. (D.E. 45-14). The parties contractual and business relationship ended in April 2010. (FedEx Statement of Material Facts ¶ 6.) According to FedEx, during the time period at issue, FedEx paid every invoice that it received from Freightmaster, and none included charges for the services that Freightmaster now alleges were never paid.[2] (FedEx Statement of Material Facts ¶ 18, 36.) Other than making its own calculations, Freightmaster has not produced invoices for this time period.[3]

---

[1] Specifically, Freightmaster states "the amount due from FedEx to Freightmaster is at least $231,012.73, not even including certain accessorial charges related to shipments to the Jacob Javits Center in New York. When you add the accessorial charges related to the shipments to the Jacob Javits Center, the amount due is approximately $240,120.00." (Freightmaster Opp. Br. at 6).

[2] Although Freightmaster alleges unpaid services fees it has not produced any unpaid invoices. All of the invoices produced, by FedEx, were paid.

[3] The Court has already upheld the validity of the contract and dismissed the quasi-contract claims. (2015 Opinion at 10 ("Neither party disputes the validity of the Agreement. [A]bsent a claim that the Agreement is invalid or that [Freightmaster] performed work beyond that covered by the Agreement, it cannot sustain claims founded on quasi-contractual theories[.]"))

There is no dispute that on April 1, 2009, Freightmaster entered into a factoring agreement and sold its accounts receivable to TC Services. (FedEx Statement of Material Facts ¶ 20; Freightmaster Statement of Material Facts ¶ 20.) Freightmaster and TC Services executed two more substantially similar factoring agreements in November 2010. (Id.) These agreements "[sold], transfer[ed], convey[ed], assign[ed], and deliver[ed]" the accounts receivable to TC Services as "absolute owner." (FedEx Statement of Material Facts ¶¶ 21, 22; Freightmaster Statement of Material Facts ¶¶ 21, 22.)

## II.   Procedural Posture

On March 24, 2014, Freightmaster filed the suit currently before the Court in state court. The complaint was nearly identical to a previous complaint it had filed against FedEx in September 2012, which was dismissed without prejudice. (2015 Opinion at 2.) The current complaint alleges six counts of liability against FedEx: breach of contract (count one); breach of the duties of good faith and fair dealing (count two); unjust enrichment (count three); negligent infliction of economic loss (count four); promissory estoppel (count five); and bad faith (count six). In response to the complaint, FedEx filed a motion to dismiss in lieu of an answer, alleging insufficient process and failure to state a claim. (D.E. 1-1 ("Complaint").) The Court issued an opinion in March 2015, which dismissed the unjust enrichment (count three) and promissory estoppel (count five) claims. (2015 Opinion).

## III.   Article III Standing

FedEx argues that Freightmaster has no standing to bring this lawsuit because it is exercising another entity's rights, specifically those of TC Services.

Standing requires the Court to evaluate whether a litigant is properly before the court. This involves "both constitutional limitations on federal-court jurisdiction and prudential limitations on

3

its exercise." *Bennet v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The Constitution grants jurisdiction to federal courts only over "Cases" and "Controversies," meaning there must be an actual dispute. *Lujan v. Defenders of Wildlife*, 504 U.S 555, 559 (1992). To satisfy that Constitutional requirement, a plaintiff must have an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). Put another way, the plaintiff must satisfy three elements: (1) injury in fact; (2) nexus between injury and complained of conduct; and (3) likelihood of redressability with a favorable decision. *Joint Stock Society v. UDV North America, Inc.*, 266 F.3d 164, 175 (3d Cir. 2001).

A plaintiff bears the burden of demonstrating standing to bring the suit, a burden that progresses with the litigation and mirrors the applicable burden at each stage. *Lujan*, 504 U.S. at 561, which means that Freightmaster must make the same showing for standing as for surviving summary judgment. It must show that there is a genuine issue of material fact as to standing and provide evidence to support each element of standing. *Id. See also Sierra Club v. E.P.A.*, 292 F.3d 895, 899 (D.C. Cir. 2002) ("[A] plaintiff . . . must support each element of its claim to standing 'by affidavit or other evidence.' Its burden of proof is to show a 'substantial probability' that it has been injured, that the defendant caused its injury, and that the court could redress that injury.") (citations omitted).

As to the first element, viewing the facts in a light most favorable to Freightmaster, the Court finds there was an injury in fact. Freightmaster's co-owner and vice president, Thomas Toscano, testified in deposition and by affidavit that Freightmaster did in fact suffer a particularized injury: it was not paid for services rendered. (D.E. 45-9 ("Toscano Deposition") at 74-76.)

Finding there was evidence adduced of an injury, the Court must analyze the nexus between injury and complained of conduct. *Joint Stock Society*, 266 F.3d at 175. The nexus is self-evident here. FedEx's alleged failure to pay Freightmaster caused Freightmaster's lack of compensation.

Assuming there was an injury in fact, caused by FedEx, the Court now looks to the final factor – likelihood of redressability with a favorable judicial decision. *Id.* There appears to be no dispute that Freightmaster sold its accounts receivable to TC Services for the time in which it claims FedEx owed it money. (FedEx Statement of Material Facts ¶ 20; Freightmaster Statement of Material Facts ¶ 20.) By assigning and selling the accounts in their entirety, Freightmaster did not receive any money from FedEx for its invoices.[4] (FedEx Statement of Material Facts ¶ 24.) Pursuant to the factoring agreement, FedEx paid its invoices from Freightmaster directly to TC Services. (FedEx Statement of Material Facts ¶ 31; Freightmaster Statement of Material Facts ¶ 31.) The Court finds that Freightmaster has no right to, or interest in, that money because it sold it to TC Services and received compensation for those accounts receivable. Now, if the Court were to remedy Freightmaster's alleged injury, caused by FedEx, it could not redress the harm because any money that FedEx owed to Freightmaster during this time would necessarily belong to TC Services.

Freightmaster argues that it "has standing to prosecute the Complaint, since it did not factor the receivables that are the subject of the Complaint to TC Services, Inc." (D.E. 47 at 3.) However, as will be seen, the agreement between Freightmaster and TC Services broadly confers, assigns, sells, and transfers the rights to all receivable accounts. Moreover, the Court has already

---

[4] In response to this purported fact put forth by FedEx, Freightmaster states that TC Services did not collect all of the money from the bills charged to FedEx. However, it does not provide any evidence, other than Toscano's statements, to support this contention. The Court accordingly looks to the evidence on the record and the plain meaning of the contract terms.

5

dismissed all the quasi-contract theories of recovery. The contract between Freightmaster and FedEx (which outlines payment and invoice methods), and the contract between Freightmaster and TC Services (which assigns all rights to collect money from those invoices to TC Services), are the exclusive terms and conditions the Court examines.

To support its argument that it does indeed have standing, Freightmaster offers the deposition testimony of its president and co-owner, Thomas Toscano, who testified that TC Services "didn't bill all of our stuff," meaning there were certain fees that would go from FedEx directly to Freightmaster. (D.E. 47 at 8.) He further stated that he contacted Dave Anderson, an employee at TC Services, who told him that if FedEx were to pay out on the accounts in question, TC Services would just forward the money to Freightmaster because it collected all its money on the accounts receivable. (D.E. 47 at 10-11.) Even assuming that this is reliable and accurate information, it does not affect this Court's decision. Hearsay testimony in a deposition does not override an enforceable contract. The Court does not need to look beyond the plain words of the contract between Freightmaster and TC Services, which assign <u>all</u> accounts receivable to TC Services. *Conway v. 287 Corporate Center Assocs.*, 187 N.J. 259, 268 (2006) ("In general, the parol evidence rule prohibits the introduction of evidence that tends to alter an integrated written document."(citing *Restatement (Second) of Contracts* § 213 (1981))).

The pertinent contract clauses, which appear in each of the three factoring agreements, state:

> **Purchase and Sale of Accounts Receivable**.
> (i) For the consideration hereinafter set forth and subject to the terms and conditions contained herein, Client [Freightmaster] hereby sells, transfers, conveys, assigns and delivers to Factor [TC Services, Inc.] as absolute owner, and Factor hereby purchases and receives from Client all of the right, title and interest of Client in and to those certain accounts receivable…owing to Client arising from…the rendering of services by Client in the ordinary course of Client's business (hereinafter referred to as "Accounts" or "Account") which

6

> have been duly offered for sale by Client to Factor and approved for purchase by Factor at a discount in accordance with the terms hereof.
>
> . . .
>
> **Accounts Receivable.**
> All Accounts offered for sale to Factor shall be evidenced by written invoices or other such equivalent documentation as required by Factor, together with supporting documentation including, but not limited to, purchase orders and written proof of delivery and acceptance of the goods or satisfactory performance of the services provided, and shall be payable upon terms acceptable to Factor. The decision to approve or reject Accounts offered for sale shall rest solely with Factor and Factor shall have no liability to Client's for Factor's failure or refusal to purchase an Account. Upon receiving approval for purchase or actual purchase of Accounts by Factor, Client shall not vary the terms of sale or payment set forth in the invoices relating thereto without Factor's written approval.

(D.E. 45-11 to 13.)

These provisions broadly confer the rights to the accounts receivable to TC Services. There are no carve outs respecting the sale of accounts receivable for certain services. The plain language of the agreements contemplates all charges for the services Freightmaster provided to FedEx. Freightmaster argues that its arrangement with TC Services did not contemplate accessorial charges, but there is nothing in the language of the agreements to support this. FedEx correctly points out that Freightmaster did not provide any extrinsic evidence for its position beyond what is offered through Toscano's deposition by way of a hearsay statement from a TC Services employee, with no further evidentiary support by way of an affidavit or writings between Freightmaster and TC Services. (D.E. 48 ("FedEx Reply Br.") at 6).

Evaluating the evidence, the Court finds that Freightmaster sold its accounts receivable to FedEx, without restrictions or exceptions for accessorial or any other charges and by written agreement, TC Services is entitled to all payment and money FedEx owed to Freightmaster during this period of time. As such, Freightmaster has not met its burden to demonstrate redressability,

because a favorable judicial decision finding FedEx liable for the money allegedly due would provide TC Services with a remedy, not Freightmaster. Consequently, Freightmaster does not have requisite standing to litigate with FedEx.

### IV.     Summary Judgement Assuming Standing Exists

Under Federal Rule of Procedure 56, "[s]ummary judgment is appropriate when the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is material and genuine if it "affects the outcome of the suit under the governing law and could lead a reasonable jury to return a verdict in favor of the nonmoving party." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (quotation and alteration marks omitted). The party seeking summary judgment "has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact." *Id.* The nonmoving party must "identify facts in the record" that would allow it to "make a sufficient showing on essential elements" of which it has the burden to prove to resist summary judgment." *Id.*

FedEx raises three arguments in support of its summary judgment motion: (1) Freightmaster has no breach of contract claim because in never submitted any invoices for the alleged unpaid service; (2) there was no bad faith because FedEx complied with its contractual obligations; and (3) negligent infliction of economic loss is not a cognizable claim in New Jersey. (D.E. 45 ("FedEx Br. in Support of Summary Judgment") at i.) The factual record before the Court shows that Freightmaster has never submitted evidence of payment due through invoices, receipts, or documentation. Conversely, FedEx submitted documentation that all of the invoices for the time period in question were paid.

This record presents no genuine issue of material fact because the only concrete evidence supports all of FedEx's defenses and narrative, which is met by Freightmaster's unsupported allegations that do not encompass a reliable measure or breakdown of the alleged fees owed, let alone evidence that payment remains outstanding.  Taken in their best light, these conclusory statements do not create a genuine issue of material fact.  Mere allegations in the face of contractual terms and invoices are not enough.  Drawing all reasonable inferences in Freightmaster's favor, no reasonable jury could find for it on the evidence adduced in discovery.

**V.      Conclusion**

Freightmaster's complaint is dismissed for lack of Article III standing and substantively under Rule 56.  An appropriate order will follow.

s/ Katharine S. Hayden_____<br>Katharine S. Hayden, U.S.D.J.

Dated:  December 29, 2016